UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PETER BECKERMAN and :
RAINFOREST BOTANICALS, LLC.,
 :
        Plaintiffs,     05 Civ. 5234 (BSJ) (GWG)
 :
  -v.- **OPINION AND ORDER**
 :
ROBERT HEIMAN and
EPICUREN DISCOVERY, INC., :

        Defendants. :
-----------------------------------------------------------X

Appearances

Robert J. Hantman
Hantman & Associates
432 Park Avenue South, 2nd Floor
New York, NY 10016
Attorney for Plaintiffs

Charles R. Hoffmann
Anthony Bennett
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, NY 11791
Attorneys for Defendants

1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PETER BECKERMAN and                         :
RAINFOREST BOTANICALS, LLC.,
                                            :
            Plaintiffs,                            05 Civ. 5234 (BSJ) (GWG)
                                            :
    -v.-                                    OPINION AND ORDER
                                            :
ROBERT HEIMAN and
EPICUREN DISCOVERY, INC.,                   :

            Defendants.                     :
------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Defendants have moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Central District of California ("CDC"), Southern Division. For the following reasons, the motion is granted.

I. BACKGROUND

   A. The Parties and Their Business Dealings

In July 1998, plaintiff Peter Beckerman formed Rainforest Botanicals, LLC ("Rainforest") with several close associates. See Declaration of Peter Beckerman in Opposition to Defendants' Motion to Transfer Venue, filed Nov. 30, 2005 (Docket #29) ("Beckerman Decl."), ¶ 1. Rainforest develops and distributes natural health products and ingredients, including a line of products called "Corigem Propolis," which is made from a substance generated by honey bees. Id. ¶ 1; Declaration of Robert Heiman in Support of Motion to Transfer Venue, filed Nov. 15, 2005 (Docket #20) ("Heiman Decl."), ¶ 2. Rainforest is incorporated in California. Beckerman Decl. ¶ 2. It has an office in Locust Valley, New York,

id. ¶ 2, but, as described further below, that office appears to have no function other than to receive mail. Beckerman himself resides in Florida. Id. ¶ 3.

Defendant Epicuren Discovery, Inc., ("Epicuren") is a California corporation in the business of developing and marketing skincare and other spa products. See Declaration of Dennis Finger in Support of Motion to Transfer Venue, filed Nov. 15, 2005 (Docket #21) ("Finger Decl."), ¶ 3. Defendant Robert Heiman, also a California resident, is the founder of Epicuren and is actively involved in the development and marketing of its products. See Heiman Decl. ¶ 1.

Beckerman first met Heiman in Hawaii in September 2001 to discuss the sale of Rainforest's Corigem Propolis products. See Beckerman Decl. ¶ 13. Thereafter they had further discussions in Hawaii and also in person in California concerning a potential business relationship between Rainforest and Epicuren. Id. ¶ 13; Heiman Decl. ¶¶ 2, 6. The face-to-face meetings in California took place at Epicuren's place of business in Laguna Hills or at a nearby location. Heiman Decl. ¶ 6. Beckerman made some contacts with Epicuren via telephone from New York and Brazil. See Beckerman Decl. ¶¶ 13, 23.

Around the end of 2001, Beckerman sent samples of his product to Heiman in California, and Heiman used the samples as an ingredient to test and formulate new skincare and other health-related products. Heiman Decl. ¶ 3. In the spring of 2002, Heiman's work resulted in a topical gel that was beneficial as a skin treatment. Id. The development, production, and marketing of the Epicuren propolis products took place in the Central District of California at or near Epicuren's facility in Laguna Hills. See id. ¶¶ 8-9. Beckerman would often stop by

Epicuren's offices during development of the products and would be given samples of the products at those times. Id. ¶ 8.

Robert Launer, an associate of Beckerman's who resides in New York, also met with and had numerous telephone conversations with Heiman concerning the potential business relationship. Beckerman Decl. ¶¶ 14-15. In addition, Gary Maley, Jeff Hughes, Daniel Garvin, Dorothy Aranson, Steve Farland, and Charles Beckerman met with Heiman and participated in the discussions with Heiman concerning the potential business relationship. Id. ¶ 16. Maley, Hughes, and Garvin reside in Hawaii, and Aranson and Charles Beckerman reside in New York. Id. ¶¶ 17-18. Farland resides in Colorado. Id. ¶ 19.

In May 2002, Rainforest and Epicuren entered into a written agreement ("Agreement") signed by Beckerman on behalf of Rainforest and by Heiman in both his individual and representative capacities. See Rainforest Botanicals LLC ("Agreement") (reproduced as Ex. D. to Memorandum in Support of Defendants' Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer this Action to the Central District of California, filed Nov. 15, 2005 (Docket #19) ("Def. Mem.")). Beckerman and Rainforest were represented by Shepard A. Federgreen, Esq., in connection with the Agreement. Beckerman Decl. ¶ 21. Federgreen's office is located in New York. Id. ¶ 22. The Agreement was signed in California. Heiman Decl. ¶ 7.

The Agreement sets forth the terms of a business arrangement under which Rainforest agreed to sell Corigem Propolis to Epicuren for use in formulating Epicuren products. See Agreement. This suit alleges that Epicuren violated a provision of the Agreement that required Epicuren to "prominently feature the words Corigem Propolis$^{TM}$" in the labeling and marketing of products. See Complaint ¶¶ 72-85; Agreement ¶ 4; Beckerman Decl. ¶ 25. In addition,

Beckerman claims that he introduced a Dr. John Heggers and a Dr. Allan Lord to Heiman in reliance on Heiman's promise that he would represent plaintiffs' interests in negotiating with Drs. Heggers and Lord regarding their peer review of Corigem Propolis products. Complaint ¶¶ 96-105; Beckerman Decl. ¶¶ 39, 45. Instead, Heiman allegedly engaged in "self-dealing" by taking advantage of the introduction to develop business relationships with the doctors for his and Epicuren's exclusive benefit. Complaint ¶¶ 106-111; Beckerman Decl. ¶¶ 46-47.

Much of the promotion of Epicuren's products occurred in the Central District of California, including symposia to promote the new products. Heiman Decl. ¶¶ 10-12. There is no record of any promotion having taken place in New York. The bee propolis supplied by Rainforest was shipped from Brazil to California. Finger Decl. ¶ 5. Afterwards, a manufacturer located in Riverside, California, added the propolis into Epicuren's formulations and bottled the final product. Id. The labels were designed in California, and were placed on the products there. Id. The products were sold worldwide, including some sales to New York consumers at spas, hotels and retail outlets. Beckerman Decl. ¶ 27. Less than 2% of the product sold worldwide was sold in New York, and more than 70% was sold in California. Finger Decl. ¶ 6.

The billings from and payments to Rainforest under the Agreement were transmitted to and handled through Rainforest's office in New York. Beckerman Decl. ¶ 23.

B. The Instant Action

On June 1, 2005, plaintiffs filed the complaint in this action. See Complaint. The complaint asserts various claims under the Lanham Act and New York state law, including "false designation of origin (reverse palming off), false advertising, trademark infringement, trademark dilution, unfair competition, misappropriation of trade secrets, breach of contract, breach of

covenant of good faith and fair dealing, conversion, tortious interference with prospective business advantage or relations, breach of fiduciary duty, fraudulent misrepresentation, product disparagement, and other related wrongful and illegal actions." Id. ¶ 1. On October 24, 2005, plaintiffs filed a motion for a preliminary injunction, see Docket #9, which was denied on December 16, 2005.

On November 15, 2005, defendants filed the instant motion and supporting papers to transfer venue. See Notice of Motion, filed Nov. 15, 2005 (Docket #18); Def. Mem.; Heiman Decl.; Finger Decl. Plaintiffs opposed the motion and filed opposition papers. See Beckerman Decl.; Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue, filed Nov. 30, 2005 (Docket #28) ("Pl. Opp. Mem."). Defendants filed a reply. See Reply Memorandum in Support of Epicuren's Motion to Transfer, filed Dec. 12, 2005 (Docket #34) ("Def. Reply Mem."). Thereafter, defendants submitted a letter making additional arguments. See Letter from Charles R. Hoffmann to Judge Gorenstein, filed Mar. 28, 2006 (Docket #39) ("Def. Supp. Letter"). Plaintiffs responded to this letter. See Letter from Bryan Ha to Judge Gorenstein, dated April 3, 2005 ("Pl. Supp. Letter").

II. DISCUSSION

    A. Law Governing Motions to Transfer Venue

28 U.S.C § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to transfer a case from one judicial district to another is a two-part inquiry. In re Nematron Corp. Securities Litigation, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998). First, the court must determine whether the

6

case sought to be transferred could have been brought in the proposed transferee court. Id. Second, the court must decide whether transfer is warranted for the convenience of parties and witnesses, and in the interest of justice. Id. (citing Wilshire Credit Corp. v. Barrett Capital Management Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)). Here, it is undisputed that this action could have been brought in the Central District of California. Therefore only the second part of the inquiry is at issue.

The Second Circuit has held that "courts should give deference to a plaintiff's choice of forum." Iragorri v. United Technologies Corp., 274 F.3d 65, 70 (2d Cir. 2001). Nonetheless, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Id. at 71 (citations omitted). Whether transfer should occur is "determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); accord Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). The moving party must make a "clear and convincing showing that the balance of convenience favors defendants['] choice." Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995); accord Time Products v. J. Tiras Classic Handbags, Inc., 1994 WL 363930, at *12 (S.D.N.Y. July 13, 1994); Ayers v. Arabian American Oil Co., 571 F. Supp. 707, 709 (S.D.N.Y. 1983); see also Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978) ("There can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum."), cert. denied, 440 U.S. 908 (1979), abrogated on other grounds by, Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990).

In deciding whether a transfer is warranted for the convenience of parties and witnesses, and in the interest of justice, courts have typically considered the following factors:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

Nematron, 30 F. Supp. 2d at 400 (citing cases); accord Cavu Releasing, LLC. v. Fries, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005); EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 282 (S.D.N.Y. 2004); APA Excelsior III L.P. v. Premiere Technologies, Inc., 49 F. Supp. 2d 664, 667-68 (S.D.N.Y. 1999); Cento Group, S.p.A v. OroAmerica, Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)). "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the Court's discretion." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).

Each of these factors is discussed in turn.

### B. Application of the Section 1404(a) Factors

#### 1. Convenience of the Parties and Non-Party Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." Nematron, 30 F. Supp. 2d at 400 (quoting Cento Group, 822 F. Supp. at 1060) (bracketing added and internal quotation marks omitted); accord Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991) ("[t]he convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of

8

whether a transfer should be granted"). We first address the convenience of the parties, and then the convenience of non-party witnesses.

a. Convenience of Parties

Both defendants in this case are located in the Central District of California: Robert Heiman resides there and Epicuren is a California corporation with its principal place of business in Orange County, California. See Heiman Decl. ¶ 1; Finger Decl., ¶ 3. Moreover, Epicuren's directors, officers, and employees reside there as well. Finger Decl. ¶ 4. Defendants assert that it will be extremely disruptive to their business if they are required to litigate this case in New York because of the necessity of senior management to undertake burdensome travel to New York. Def. Reply Mem. at 4-5.

Beckerman was residing in Brazil when he commenced this action but has since moved back to the United States. Beckerman Decl. ¶ 3. While at one point he resided in New York, he now has taken up "temporary" residence in Florida to pursue "business opportunities." Id.

Rainforest is incorporated in California. Beckerman Decl. ¶ 2. While it has an office in New York, id., plaintiffs provide no information regarding the office's size, number of employees, or function. Plaintiffs have not contradicted defendants' contention that in fact there are no employees of Rainforest other than Beckerman himself and that, because Beckerman resides in Florida, Rainforest's New York office amounts to nothing more than a "mail drop." Def. Reply Mem. at 4.[1] In other words, "[t]o require Rainforest to appear in California simply

---

[1] In their supplemental letter to the Court, defendants asserted that Federgreen testified at the preliminary injunction hearing that Rainforest "does not have any employees or members other than Beckerman." Def. Supp. Letter at 2. Plaintiffs' responsive letter did not dispute this point. See Pl. Supp. Letter.

9

requires Beckerman to appear in California." See Def. Supp. Letter at 2; Def. Mem. at 4.

Thus, the location of the corporate parties strongly favors transferring this matter to California since both are incorporated in California, Epicuren is located in California, and Rainforest's office in New York has little significance. With respect to the individual parties, Heiman resides in California and Beckerman himself does not reside in New York but rather in Florida. While Beckerman asserts that New York would nonetheless be a more convenient location for him to litigate this case, see Pl. Opp. Mem. at 11, he provides no reasoned explanation of why this is so. During the negotiations leading up to the contract at issue here, Beckerman often traveled to Epicuren's facilities in California. Heiman Decl. ¶ 6. Thus, he has proven capable of frequently traveling to California. Given that he must travel a significant distance regardless of where the litigation takes place, he has not shown that he would be subject to significantly greater inconvenience if the case were transferred to California.

In support of their position, plaintiffs cite to Arrow Electronics, Inc. v. Ducommun Inc., 724 F. Supp. 264 (S.D.N.Y. 1989), a decision rejecting transfer from New York. Pl. Opp. Mem. at 11-12. But the decision in Arrow Electronics was based in part on "the fact that plaintiff's headquarters [was] located in New York State." Id. at 266. Here, Rainforest's New York presence is essentially meaningless as Beckerman, its sole employee and officer, currently resides in Florida and the company is incorporated in California. Beckerman Decl. ¶ 2; Def. Supp. Letter at 2.

### b. Convenience of Witnesses.

"The 'core determination' under § 1404(a) is 'the center of gravity of the litigation, a key test of which is the convenience of the witnesses. . . . Courts routinely transfer cases when the

principal events occurred, and the principal witnesses are located, in another district.'" Clay Paky v. Vari-lite, Inc., 2000 WL 977709, at *7 (S.D.N.Y. July 14, 2000) (quoting Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991). "In evaluating this factor, the court should 'look beyond the quantity of witnesses and assess the quality of the testimony to be offered.'" DealTime.com v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (quoting American Alliance Ins. Co. v. Sunbeam Corp., 1999 WL 38183, at *1 (S.D.N.Y. Jan. 28, 1999)). Accordingly, the movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors, 579 F.2d at 218. This may be satisfied by "a very general indication of [the witnesses'] role in the transaction at issue, and thus by implication, of their testimony," although it is preferable for the moving party to submit "a more elaborate statement of probable testimony." Arrow Electronics, 724 F. Supp. at 267 n.1. Still, "a specific showing is required only when the movant seeks a transfer solely 'on account of the convenience of witnesses.' . . . [However, if] plaintiff seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." Connors v. Lexington Ins. Co., 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original) (quoting Factors, 579 F.2d at 218).

In a proposed scheduling order, the parties gave a listing of the witnesses they intended to depose, though they did not list all of the individuals or entities that they intend to call as witnesses at trial. See Proposed Scheduling Order, filed Oct. 27, 2005 (Docket #13) ("Scheduling Order"). Defendants list four individual witnesses in the Scheduling Order and leave open the possibility that they may add more – including some who reside in Brazil. Scheduling Order at 4. Among the specific witnesses listed by defendants are Beckerman, Dr.

11

Heggers, Dr. Lord, and Drew Schaffer. None of these witnesses is located in New York. Dr. Lord[2] and Schaffer reside in California, and Dr. Heggers resides in Texas. Def. Mem. at 12.

Plaintiffs list numerous witnesses whom they expect to depose. See Scheduling Order at 4. Plaintiffs list additional witnesses in their opposition papers. Pl. Opp. Mem. at 17-18. In total, they list approximately 25 witnesses who reside either in California, New York, Brazil, Colorado, or Texas. Only four of the 25 are located in New York, however: Robert Launer, Dorothy Aranson, Charles Beckerman, and Shepard Federgreen. With respect to these, plaintiffs assert that they "will provide crucial testimony concerning the improper labeling of Epicuren products and other aspects of the business relationship between plaintiffs and defendants." Beckerman Decl. ¶ 28. Plaintiffs also list several New York spas and retail establishments that they intend to call as witnesses. Scheduling Order at 4. But given that 70% of the product was sold in California, it appears that these particular witnesses were selected only because of their connection to New York. In other words, there is no reason to believe that plaintiffs could not easily find similar witnesses in California.

Plaintiffs allege that defendants failed to identify the subject matter of the testimony of any witness who defendants claim will be inconvenienced by litigating the case in New York, and thus that their witnesses cannot be considered "material witnesses." Pl. Opp. Mem. at 16 (quoting DealTime.com, 123 F. Supp. 2d at 755). Indeed, the Scheduling Order does not specify the witnesses' expected testimony. However, Dr. Lord, Schaffer, and Dr. Heggers are mentioned

---

[2]Plaintiffs claim that Allan Lord resides in Texas, and they cite to a newspaper article to support their claim. Pl. Opp. Mem. at 17. While the article described Lord as a "Dallas businessman," it also states that he "shuttles between Texas and a Southern California home." DallasNews.com (reproduced as Ex. B to Beckerman Decl.), at 1, 2.

throughout plaintiffs' complaint, see Complaint ¶¶ 96-111, 116-118.  As already discussed, the conduct of Epicuren toward Drs. Lord and Heggers is a critical element of the complaint.  See Complaint, ¶¶ 96-111, 214-221.  Thus, based on plaintiffs' own allegations, the testimony of Dr. Lord, Schaffer, and Dr. Heggers – who are alleged to have been involved in transactions that form the basis of several claims in the complaint – are more material to this case than plaintiff's New York witnesses, who will only testify to the negotiation of the Agreement.  Furthermore, most of the witnesses outside California and New York are located in states (such as Colorado and Texas) that are closer to California.

In sum, the non-party witnesses will be more inconvenienced if this case is litigated in New York rather than California, and thus this factor too weighs in favor of transferring the case.

### 2. Location of Documents and Ease of Access to Sources of Proof

"This factor is clearly an important consideration in motions to transfer pursuant to 28 U.S.C. § 1404(a)."  Nematron, 30 F. Supp. 2d at 403 (citing Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co., 734 F. Supp. 54, 58 (N.D.N.Y. 1990); see also Linzer v. EMI Blackwood Music Inc., 904 F. Supp. 207, 217 (S.D.N.Y. 1995) (noting that "efficient access to . . . documents [is a] factor[] that strongly militate[s] in" deciding a motion to transfer).  However, this is not a "particularly persuasive factor in favor of transfer" where documents are not "particularly bulky or difficult to transport."  Stinnes Interoil, Inc. v. Apex Oil Co., 604 F. Supp. 978, 983 (S.D.N.Y. 1985); accord Citibank, N.A. v. Affinity Processing Corp., 248 F. Supp. 2d 172, 177 (E.D.N.Y. 2003).  It appears that the vast majority of the relevant documents in this case are in California: specifically, documents relating to the development, marketing, design, manufacturing, and labeling of the product, as well as Epicuren's financial statements.

See Def. Mem. at 12; Finger Decl. ¶ 7. Nonetheless, defendants assert that there are only 35 boxes of documents. Def. Supp. Letter at 3. There is no reason to believe that these boxes could not be transported by normal commercial means. Accordingly, this factor does not weigh in favor of either party.

### 3. Location of the Operative Facts

The location of a case's operative facts is considered a "primary factor." DealTime.com, 123 F. Supp. 2d at 756. Here, the relevant operative facts did not occur in New York but rather in California. Indeed, the only New York connection to the operative facts appears to be that one side of some telephone conversations between plaintiffs and defendants took place in New York. However, "the location of negotiations [is] not a significant factor as compared to the concern for the convenience of the parties and witnesses." Arrow Electronics, 724 F. Supp. at 267. Most of the facts relevant to plaintiffs' cause of action occurred in California: the contract was executed in California, Heiman Decl. ¶ 7; the product was developed, designed, manufactured, marketed, labeled, and shipped in California, Finger Decl. ¶¶ 5-6; and 70% of the product was sold in California (compared to only 2% sold in New York), id. ¶ 6. Furthermore, several meetings between the parties took place in California, and none occurred in New York. Heiman Decl. ¶¶ 6-7. Therefore, this factor weighs in favor of transfer. See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005) (transferring case to Pennsylvania even where "it is unclear whether Pennsylvania is the locus of operative facts [because] it is clear that New York is not" and holding that "[w]here there is no material connection between the district and the operative facts, the interests of justice require the transfer of [the] action").

4. Availability of Process to Compel Unwilling Witnesses

The parties have not presented any evidence that any of the non-party witnesses would be unavailable to testify or unwilling to travel to either New York or California. Therefore, this factor cannot "tip the balance . . . in light of the option of videotaping testimony of witnesses unwilling to travel." DealTime.com, 123 F. Supp. 2d at 757; accord Citigroup Inc., 97 F. Supp. 2d at 561-62 ("the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists"); Hernandez, 761 F. Supp. at 989.

5. Relative Means of the Parties

Plaintiffs claim that defendants have greater means to travel than plaintiffs. "Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). However, this factor will be accorded "little or no significance" absent a showing of disparity of means between plaintiffs and defendants. See Hernandez, 761 F. Supp. at 989. Plaintiffs contend that Epicuren "is a large, established corporation" and "is a successful and highly profitable company." Pl. Opp. Mem. at 13. Defendants do not dispute this contention. However, plaintiffs have failed to give any specifics regarding their own financial situation. Beckerman has merely asserted that he is an individual of "limited personal savings." Id. This statement is somewhat at odds with Federgreen's testimony at the preliminary injunction hearing that "the Beckerman family, inclusive of Peter's father, mother, brother and himself, on a collective basis, through individual assets and assets that the family controls, could distribute propolis around the world several times," Def. Supp. Letter at 2. Nonetheless,

accepting Beckerman's contention that "his family is not funding this litigation and their assets are not available to . . . Beckerman to use to fund this litigation," the word "limited" is extremely unenlightening and thus the Court is still left to guess as to what resources are in fact available to Beckerman. Pl. Supp. Letter at 2. More important, Beckerman does not live in New York anyway and thus he is going to have to travel in order to litigate this case no matter where it is sited. While air fare might be more expensive for a trip from Florida to California rather than to New York, there is no reason to believe that it will be materially more expensive.

Beckerman's strongest argument is that he has "only retained counsel in New York," Pl. Opp. Mem. at 14. However, there is no indication that such counsel could not appear <u>pro hac vice</u> in California. While Beckerman may have to bear some additional cost as a result of the transfer, such as payments to a local counsel or some travel for his attorney, this factor is not strong when viewed in comparison with the other factors already discussed.

### 6. <u>Forum's Familiarity with the Governing Law</u>

Defendants assert that California law would apply to plaintiffs' state law claims and that therefore the California courts' familiarity with California law supports a transfer. Def. Mem. at 14-16. Indeed, a district court is presumably more familiar with the law of the state in which it sits than with that of a foreign jurisdiction. <u>Howard v. Four Seasons Hotels, Ltd.</u>, 1997 WL 107633, at *3 (S.D.N.Y. 1997). However, "[t]he fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer, . . . especially in an instance . . . where no complex questions of foreign law are involved." <u>Vassallo v. Niedermeyer</u>, 495 F. Supp. 757, 760 (S.D.N.Y. 1980); <u>see also</u> <u>Schwarz v. R.H. Macy's Inc.</u>, 791 F. Supp. 94, 96 (S.D.N.Y. 1992) (a forum's familiarity with governing law "is not more

16

significant than convenience to the parties and witnesses"). Moreover, plaintiffs have asserted federal claims, and federal courts are equally capable of adjudicating these. See DealTime.com, 123 F. Supp. 2d at 757 ("To the extent this action raises questions of federal law, either forum is equally capable of hearing and deciding those questions."). Therefore, this factor is neutral with respect to transferring the case.

### 7. Plaintiff's Choice of Forum

District Courts deciding transfer motions have noted that "[a] plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant. Where the factors are equally balanced, the plaintiff is entitled to its choice." Berman, 30 F. Supp. 2d at 659 (citations omitted). However, "plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred." Dwyer v. General Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994); accord Indian Harbor Ins. Co, 419 F. Supp. 2d at 405; ZPC 2000, Inc. v. SCA Group, Inc., 86 F. Supp. 2d 274, 280 (S.D.N.Y. 2000) ("when a plaintiff brings a suit in a forum that has no material connection with the action, this factor should be given little weight") (internal quotation marks and citations omitted).

For the reasons already discussed, we do not consider New York to be a forum that is plaintiffs "home." Nor is it the place where "the operative facts of the action occurred." Rather, New York has little connection to this action. The negotiations that took place via telephone from New York were trivial in comparison to the events that took place in California. The only material connection between plaintiffs' lawsuit and this forum is that a small percentage of the product at issue was sold within this Court's jurisdiction – but this is far outweighed by the much

greater amount of product sold in California.  See Kwik Goal, Ltd. v. Youth Sports Publ'g Inc., 2006 U.S. Dist. LEXIS 34460, at *5-*7 (S.D.N.Y. March 31, 2006) (plaintiff's choice of forum was entitled to "less deference" where the forum was not plaintiff's "home state" and "the case lack[ed] material or significant contacts with the forum state" because "no one involved in th[e] litigation [was] located in the SDNY" and the sales in the district "were minimal," i.e., less than four percent).

        8.  Trial Efficiency and Interest of Justice

Nothing with respect to the interest of trial efficiency or justice, outside of the factors discussed above, weighs in favor of or against transferring this case.

    C.  The Weight of the Balancing Factors

After balancing the convenience to the parties and witnesses and the interest of justice, the factors strongly weigh in favor of transferring this case to the Central District of California. With respect to the most important factors, it would be more convenient to the parties and non-party witnesses for this case to be litigated in California rather than New York.  Furthermore, the locus of operative facts is in California.  None of the other factors weigh in favor of plaintiffs. Therefore, defendants have shown by clear and convincing evidence that the balance of convenience favors transferring this case to the Central District of California.

CONCLUSION

For the reasons stated above, defendants' motion to transfer (Docket #18) is granted. However, in light of the plaintiffs' right to seek reconsideration of this ruling by the District Judge, see 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a), and in order to preserve the jurisdiction of the District Judge to conduct such review, the Court will stay transfer of this matter until the

disposition by the District Judge of any timely-filed objections to this Opinion and Order. All proceedings in this matter are hereby stayed. No transfer shall take place until further order of the Court.

SO ORDERED.

Dated: New York, New York
June 16, 2006

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Robert J. Hantman
Hantman & Associates
432 Park Avenue South, 2nd Floor
New York, NY 10016
Attorney for Plaintiffs

Charles R. Hoffmann
Anthony Bennett
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, NY 11791
Attorneys for Defendants

Hon. Barbara S. Jones
United States District Judge

disposition by the District Judge of any timely-filed objections to this Opinion and Order. All proceedings in this matter are hereby stayed. No transfer shall take place until further order of the Court.

SO ORDERED.

Dated: New York, New York
June 16, 2006

*[signature]*
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Robert J. Hantman
Hantman & Associates
432 Park Avenue South, 2nd Floor
New York, NY 10016
Attorney for Plaintiffs

Charles R. Hoffmann
Anthony Bennett
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, NY 11791
Attorneys for Defendants

Hon. Barbara S. Jones
United States District Judge